IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAUL L. BURCHARDT, JR.,                ) | |
|                                         ) | |
|        Plaintiff,        ) | |
|                                         ) | |
|                                         ) | CIV-05-362-W |
| v.                                                         ) | |
|                                         ) | |
| JO ANNE B. BARNHART,                ) | |
|   Commissioner of Social Security      ) | |
|    Administration,                          ) | |
|                                         ) | |
|        Defendant.                            ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his concurrent applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___). The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings.

I. Background

Plaintiff filed his applications with the agency on July 24, 2002, alleging he became disabled on July 5, 2001, due to asthma, knee pain, and hypertension. (TR 47-49, 67, 356-359). Plaintiff's applications were administratively denied. (TR 24-25, 360-367). At Plaintiff's request, a hearing *de novo* was conducted with respect to Plaintiff's applications on March 10, 2004, before Administrative Law Judge O'Bryan ("ALJ"). At this hearing, Plaintiff testified that he had not worked since July 5, 2001, that he is unable to work because of asthma, knee pain, lower back pain, weakness, anemia, and hepatitis C viral infection. (TR 379). Plaintiff testified that he was not receiving treatment for his hepatitis C infection because he cannot afford treatment. However, Plaintiff admitted he "didn't follow through" the procedure for obtaining publicly-funded medical assistance. (TR 379-380). Plaintiff testified that he has "learned to live with" back pain and muscle spasms in his back and that he was not being medically treated for this symptom. (TR 380-382). Plaintiff described two knee surgeries in 1976 and 1980 and knee pain causing difficulty walking up and down stairs and standing in one position. (TR 382-383). Plaintiff stated that his hepatitis C infection causes weakness and that he uses an inhaler to treat his life-long asthma condition. (TR 386-387). Plaintiff also described anemia causing fatigue, problems with a "racing heart," urinary urgency, mood swings, and "a little" memory loss. (TR 387-388, 394-395). Plaintiff estimated he could sit for 20 minutes, stand for 10 minutes, walk for 15 to 20 minutes, and lift a gallon of milk. (TR 390-392). He described his activities as being "pretty much trapped in the house" although he drives short distances. (TR 392). Testimony was also

received at the hearing from a vocational expert ("VE"). (TR 396-406).

Following the hearing, the ALJ issued a decision in which the ALJ found that Plaintiff has severe impairments due to asthma, obesity, left knee arthritis, and essential hypertension but that despite these impairments Plaintiff has the residual functional capacity ("RFC") to perform work at the light exertional capacity. (TR 21, 22). Relying on the VE's testimony concerning the exertional requirements of Plaintiff's previous jobs, the ALJ found that Plaintiff's severe impairments do not prevent Plaintiff from performing his past relevant work as a delivery driver. (TR 15-22). Based on these findings, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act and is not entitled to benefits. (TR 21-22). Plaintiff's request for review of the ALJ's decision was rejected by the agency's Appeals Council (TR 5-7). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

Plaintiff contends that the ALJ erred in failing to find that Plaintiff has severe impairments due to hepatitis C infection, portal hypertension, pancytopenia, and anemia. Plaintiff also contends that the ALJ erred in failing to give substantial weight to the opinion of his physician, Dr. Rothwell, concerning Plaintiff's ability to work. Defendant responds that the ALJ did not err with respect to his evaluation of the evidence and that there is substantial evidence in the record to support the Commissioner's decision.

II. Standard of Review

Judicial review of this Complaint is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal

standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). The court will look to the record as a whole to determine whether the evidence which supports the Commissioner's decision is substantial in light of any contradicting evidence. Nieto v. Heckler, 750 F.2d 59, 61 (10th Cir. 1984); Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983)(*per curiam*). If the Commissioner fails to apply the correct legal standard or substantial evidence does not support the Commissioner's decision, the court may reverse the Commissioner's findings. Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984)(*per curiam)*. The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). To find that the Commissioner's decision is supported by substantial evidence in the record, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion. Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§416(i), 1382c(a)(3)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f) (2005); see also Williams v. Bowen, 844 F.2d 748, 750-752 (10th Cir. 1988)(describing five steps in detail). The claimant bears the initial burden of proving that he has one or more severe impairments. 20 C.F.R. §§404.1512,

416.912 (2005); Turner v. Heckler, 754 F.2d 326, 328 (10th Cir. 1985). Where the plaintiff makes a *prima facie* showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show "the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." Turner v. Heckler, 754 F.2d at 328; Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. Medical Record

The medical record reflects that Plaintiff's family physician, Dr. Rothwell, began treating Plaintiff in April 2001 for severely elevated blood pressure, for which medications were prescribed, a history of asthma, and left knee pain caused by osteoarthritis by history, for which anti-inflammatory medication samples were provided. (TR 109-110). In a follow-up appointment in April 2001, Plaintiff stated that he also had a history of exposure to the hepatitis C virus, and he complained of shortness of breath with exertion but no other symptoms. (TR 108-109). Plaintiff stated at that time that he was "doing well" on the anti-inflammatory medication previously provided for his knee pain and that he was unemployed and inactive. Dr. Rothwell noted he advised Plaintiff to increase his activities and stop smoking. (TR 109). Plaintiff's prescribed dosage of hypertension medication was increased, and Dr. Rothwell noted this condition was "poorly controlled." (TR 109). In another follow-up examination in April 2001, Plaintiff was diagnosed by Dr. Rothwell as having hypertension, hepatitis C infection, a history of alcohol abuse, and an anxiety disorder but Plaintiff declined treatment for anxiety. (TR 108).

In November 2001, Plaintiff returned to Dr. Rothwell complaining of shortness of

breath and wheezing. (TR 107-108). Dr. Rothwell interpreted x-rays of Plaintiff's knees as showing significant degenerative joint disease with essentially no medial joint space and some osteophyte formation. (TR 108). According to Dr. Rothwell's notes, Plaintiff was given a dose of inhaler medication and he was "much improved" on examination. (TR 108). Dr. Rothwell injected Plaintiff's left knee with steroidal anti-inflammatory medication and prescribed an inhaler and non-steroidal anti-inflammatory medication. (TR 108). Two days later Plaintiff's right knee was injected with steroidal anti-inflammatory medication. (TR 107).

In July 2002, Plaintiff returned to Dr. Rothwell, complaining of respiratory difficulties, and chronic knee pain. (TR 106). Dr. Rothwell noted that Plaintiff had stopped taking several of the previously-prescribed medications, and Dr. Rothwell recommended that Plaintiff see an orthopedic surgeon regarding his knee pain. (TR 106). Plaintiff's lungs exhibited slight wheezing but overall good breath sounds, and Plaintiff's blood pressure decreased with medication given to Plaintiff in the office. The physician's diagnostic assessment was possible asthma or chronic obstructive pulmonary disease ("COPD"), hypertension which was poorly controlled due to noncompliance with medications, and chronic knee pain likely due to degenerative joint changes for which Plaintiff needed orthopedic evaluation. (TR 107). Dr. Rothwell noted he would "dictate a letter for disability in regards to [Plaintiff's] inability to work due to knee problems" at Plaintiff's request, but the physician noted he "suspect[ed] the patient could have the knee problems addressed and get his asthma under control [and] he would be able to work..." (TR 107).

In October 2002, Plaintiff was examined on a consultative basis for the agency by Dr. Vallis Anthony. (TR 120-128).  In this examination, Plaintiff complained of chronic breathing problems due to asthma, insomnia, hypertension, chest pain with shortness of breath on exertion, knee pain, foot pain, and leg and ankle discoloration. (TR 120-121). Plaintiff stated that he could walk as far as he wanted to walk but at a slow pace, that he could stand without severe difficulty, sit without problems, and perform daily living activities with rest breaks. (TR 121).  On examination, Plaintiff exhibited edema up to his knees in both legs but adequate peripheral pulses and no varicosities, tender knees but no swelling or deformity, ganglion cysts on both feet, full grip strength and lower extremity strength, negative straight leg raising test, normal heel and toe walking, and slow but safe ambulation. (TR 122).  The diagnostic assessment was obesity, hypertension, asthma, degenerative joint disease of the knees, and venous insufficiency. (TR 122).

In April 2003, Plaintiff was referred by Dr. Rothwell to Dr. John Williams for assessment of his complaint of exertion-related shortness of breath and chest discomfort described as a tightness in his chest and radiating into his neck and down his arms. (TR 167). Dr. Williams noted that a previous echocardiogram showed evidence of asymmetrical septal hypertrophy and some left ventricular outflow tract obstruction. (TR 167).  Dr. Williams conducted a physical examination and an echocardiogram. (TR 167-169).  In a follow-up evaluation, Dr. Williams noted the echocardiogram showed left ventricular hypertrophy and some mild left ventricular outflow tract gradient but "not any worse than before." The diagnostic impression was hypertension with left ventricular hypertrophy. (TR 166).

In May 2003, Plaintiff returned to Dr. Rothwell who noted that Plaintiff complained of worsening weakness, shortness of breath on exertion, occasional chest discomfort, pallor, and occasional gastrointestinal bleeding. (TR 240). Laboratory testing revealed Plaintiff was anemic, and Plaintiff was scheduled for telemetry testing to evaluate his chest pain. Plaintiff was also given a blood transfusion, and his anti-hypertensive medications were re-started. (TR 241). Dr. Rothwell noted that Plaintiff also had a "history of asthma with minimal problems at this time and the patient has discontinued medication." (TR 241). Plaintiff underwent a colonoscopy (TR 201), and esophago-gastro-duodenostomy ("EGD"), which revealed no source for Plaintiff's gastrointestinal bleeding. (TR 217-219, 256-257). Plaintiff was referred to Dr. Parker for evaluation of his severe anemia and abnormal laboratory blood tests, which Dr. Parker assessed as "[p]ancytopenia which is likely related to portal hypertension from chronic hepatitis C."[1] (TR 257). At Dr. Parker's request, Plaintiff underwent a bone marrow biopsy and ultrasound testing of his liver and spleen. (TR 257, 251). The ultrasound testing was normal. (TR 175). The bone marrow biopsy was interpreted by the pathologist as showing only "absent iron stores." (TR 173-174). Dr. Rothwell advised Plaintiff that he has portal hypertension and that his pancytopenia (abnormal blood testing) was a "result of splenic sequestration." (TR 155). Plaintiff was advised to discuss his portal hypertension with his hepatologist, and Plaintiff stated he would be seeing the hepatologist in the near future. (TR 155). In August 2003, Plaintiff sought

---

[1] Pancytopenia is defined as a reduction in red and white blood cells and platelets. <http://www.webmd.com/hw/raising_a_family/nord896.asp>

treatment from Dr. Barry Perkins for his hepatitis C infection and anemia. In his first visit to Dr. Perkins, Plaintiff stated that he was told he had hepatitis C two years before but that he had not sought medical treatment for the infection. (TR 148). Plaintiff stated he had not had any more melena, or gastrointestinal bleeding following the testing conducted by his family physician, Dr. Rothwell. (TR 148). Plaintiff admitted to being a former intravenous drug user, a tobacco user, and a former "heavy drinker." (TR 148). Dr. Perkins conducted laboratory testing and a physical examination and specifically noted that the examination showed full range of motion and normal strength in all extremities and clear lungs. (TR 148-149). Dr. Perkins noted that Plaintiff needed treatment for his hepatitis C infection but that Plaintiff would need to "get on the Commitment to Care Program with Schering, the drug company that makes the medication for hepatitis C treatment" because of lack of insurance. (TR 149). At a follow-up examination in August 2003, Plaintiff complained of generalized weakness. Dr. Perkins again conducted laboratory testing and a physical examination. His assessment was hepatitis C infection and microcytic anemia. With respect to Plaintiff's hepatitis C infection, Dr. Perkins noted:

> The patient warrants treatment but there are two problems. No. 1, he has no insurance, and no. 2, he is already anemic with a hemoglobin of 9.8. The [hepatitis C medication] is only going to tend to make his anemia worse. We need to figure out what is causing this anemia before we treat him for his hepatitis C.

(TR 146). With respect to Plaintiff's anemia, Dr. Perkins noted that this was "most likely an iron deficiency anemia" and started Plaintiff on an iron supplement. (TR 146). The physician advised Plaintiff to return in three weeks to determine if his iron levels were better.

(TR 146-147). However, there is no record of further treatment, and Plaintiff admitted at his hearing that he was not receiving treatment for his hepatitis C. In October 2003, Plaintiff returned to Dr. Rothwell, complaining of neck and lumbar pain, which Dr. Rothwell described as cervical muscular irritation and mild lumbar pain for which he provided samples of muscle relaxant medication. (TR 348-349). In January 2004, Plaintiff saw Dr. Rothwell and complained of increased fatigue. (TR 347). Dr. Rothwell noted Plaintiff had a history of iron deficiency anemia and that Plaintiff needed laboratory testing to determine if he still needed iron replacement. (TR 347). Plaintiff denied chest pain or gastrointestinal symptoms. Dr. Rothwell noted that in a physical examination Plaintiff exhibited normal respiratory and cardiovascular functions. (TR 348). Dr. Rothwell assessed Plaintiff as having hepatitis C for which Plaintiff needed treatment by a hepatologist. Plaintiff admitted he had seen a hepatologist but had not returned for follow-up treatment and had not obtained the necessary laboratory testing for follow-up treatment. (TR 348). With respect to Plaintiff's complaint of fatigue, Dr. Rothwell noted this was possibly due to the hepatitis C condition. (TR 348). Dr. Rothwell prescribed blood pressure medication and an inhaler for use when needed. (TR 348).

IV. Step Two

Plaintiff contends that the ALJ erred in not finding that he has severe impairments due to hepatitis C infection, anemia, portal hypertension, and pancytopenia. Plaintiff asserts that although the ALJ noted in his decision that Plaintiff had been treated by Dr. Perkins for hepatitis C infection and anemia, the ALJ failed to find that these impairments are severe

impairments. At the second step of the required sequential analysis, the ALJ must determine whether the claimant has one or more severe impairments "which significantly limit[ ] the claimant's physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c)(2005). However, it is the claimant's burden to "make a threshold showing that his medically determinable impairment . . . significantly limits his ability to do basic work activities." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

The record shows that Plaintiff has been diagnosed as having hepatitis C and iron-deficiency anemia. However, Plaintiff was advised by his family doctor to obtain treatment for his hepatitis C infection and anemia by a hepatologist. Plaintiff saw Dr. Perkins on two occasions in April 2003 with respect to his hepatitis C infection and anemia, but he failed to return to Dr. Perkins as scheduled for treatment of his hepatitis C infection and anemia, and Plaintiff did not obtain the laboratory testing required by Dr. Perkins to determine whether Plaintiff's iron-deficiency anemia had resolved in order to allow Plaintiff to begin the medication to treat the hepatitis C infection. Plaintiff has admitted he failed to initiate and/or complete the application process for obtaining funding assistance for the treatment of his hepatitis C infection.

The record shows Plaintiff has not persistently sought medical treatment for hepatitis C. Plaintiff's treating doctors have related his hepatitis C infection to numerous symptoms and related conditions, including fatigue, portal hypertension, and pancytopenia. Plaintiff has also been treated for anemia and related symptoms, although the record shows he has not pursued follow-up treatment for this condition as requested by his treating physicians. The

record contains a medical assessment by Plaintiff's treating physician, Dr. Rothwell, in which the physician has related a number of work-related limitations to these impairments. (TR 353-354). The step two determination requires only a "de minimus" showing of an impairment to satisfy this step of the evaluation process. Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004). There is not substantial evidence to support the ALJ's finding that Plaintiff's anemia and hepatitis C are not severe impairments in light of the medical record containing repeated diagnoses and at least some medical treatment for these medically-determinable impairments.

V. Treating Doctor's Opinion

Plaintiff contends that the ALJ erred in failing to give substantial weight to the medical opinions by Dr. Rothwell authored in July 2002 and February 2004 concerning Plaintiff's ability to work. The prevailing standard for reviewing Plaintiff's claim requires the Commissioner to determine what weight to give the medical opinions. "Generally, the ALJ must give controlling weight to a treating physician's well-supported opinion about the nature and severity of a claimant's impairments." Adams v. Chater, 93 F.3d 712, 714 (10th Cir. 1996). Thus, the ALJ "must first consider whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). "If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record....[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if the treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527 and 416.927." Id. (quotation omitted). Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Id. at 1301 (quotation omitted). "Under the regulations, the agency rulings, and [precedential] case law, an ALJ must give good reasons ... for the weight assigned to a treating physician's opinion" that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." Id. at 1300 (quotations omitted). A treating physician's opinion may be rejected if it is inconsistent with other medical evidence. Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994). See Kemp v. Bowen, 816 F.2d 1469, 1476 (10th Cir. 1987)("The treating physician rule governs the weight to be accorded the medical opinion of the physician who treated the claimant ... relative to other medical evidence before the factfinder, including opinions of other physicians.")(quotation omitted). However, "[i]f the ALJ rejects the opinion completely, he must then give specific, legitimate

reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

Dr. Rothwell provided an opinion in a letter addressed "To Whom It May Concern," dated July 25, 2002, in which the physician stated that Plaintiff has hypertension, a breathing disorder, and chronic knee pain and that Plaintiff was "unable to work due to this chronic knee pain [primarily] and ... chronic respiratory difficulties." (TR 105). In this letter, Dr. Rothwell stated that Plaintiff's respiratory condition is "most likely COPD/asthma," that Plaintiff needs an orthopedic evaluation but cannot afford one, and that Dr. Rothwell was "unable to treat him for this problem." (TR 105). Further, Dr. Rothwell stated in this letter that Plaintiff's hypertension was "poorly controlled recently ... due to discontinuation of his medications, which have been restarted." (TR 105).

At Plaintiff's administrative hearing, Plaintiff submitted a written assessment by Dr. Rothwell, dated February 25, 2004, of Plaintiff's work-related abilities. In this form assessment entitled "medical source statement of ability to do work-related activities (physical)," Dr. Rothwell checked boxes indicating that Plaintiff has the exertional ability to lift less than 10 pounds, stand and/or walk less than 2 hours in an 8-hour workday, and sit about six hours in an 8-hour workday, and that Plaintiff is limited in his upper and lower extremities in his ability to push and/or pull. (TR 353-355). Dr. Rockwell expressly noted on the form that Plaintiff exhibits weakness and his exertional abilities are "probably about 50% of expected for [a] man his age." (TR 354). Dr. Rothwell also stated that Plaintiff could only occasionally balance and crouch as a result of degenerative joint disease of the knees, multiarticular arthritis, and debilitation from hepatitis C, anemia, hypertension, and

14

arteriosclerotic cardiovascular disease. (TR 354). Dr. Rothwell further noted on this assessment form that Plaintiff's ability to feel is limited due to "multiple chronic medical conditions affected C.N.S. [sic]" and that Plaintiff's ability to work in environments with temperature extremes, dust, humidity/wetness, or fumes, odors, chemicals, and gases was limited due to his history of asthma/COPD. (TR 355).

The ALJ recognized that Dr. Rothwell is a treating physician and that Dr. Rothwell had submitted an assessment of Plaintiff's ability to work. The ALJ specifically referred only to the February 2004 written assessment by Dr. Rothwell. (TR 20). However, the ALJ found that this assessment was not consistent with the evidence in the record. The ALJ referred to specific portions of Dr. Rothwell's treatment notes as reasons for his finding that the medical assessment was not consistent with other evidence of record "which renders it less persuasive." (TR 20). The ALJ specifically pointed to Dr. Rothwell's note in his office records in July 2002 that he suspected Plaintiff might be able to work at some point in the future if he had his knee problems "addressed" and got his asthma under control. (TR 107). However, even assuming that the ALJ provided sufficient reasons for disregarding Dr. Rothwell's July 2002 opinion stating Plaintiff was unable to work at all, the early records of Dr. Rothwell cited by the ALJ as reasons for disregarding this first medical opinion do not provide sufficient reasons for the ALJ to disregard completely Dr. Rothwell's second medical assessment of Plaintiff's work-related abilities authored two years later.

Moreover, in his decision, the ALJ performed the first portion of the requisite analysis for determining whether Dr. Rothwell's medical assessments were entitled to controlling

weight. The ALJ did not, however, complete the second part of the analysis required to determine what weight, if any, to give the treating physician's opinions. The ALJ's generic finding that Dr. Rothwell's very thorough February 2004 assessment of Plaintiff's work-related abilities was "less persuasive" is not sufficiently specific to allow for judicial review of the ALJ's findings as to the weight the ALJ actually gave to this treating physician's assessments and the reasons for that decision. Accordingly, the case must be remanded for further administrative proceedings with respect to the medical opinions by Dr. Rothwell and their effect upon the ultimate decision by the Commissioner as to whether Plaintiff is disabled or not.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter REVERSING the decision of the Commissioner to deny Plaintiff's applications for disability insurance and supplemental security income benefits under Sentence Four of 42 U.S.C. § 405(g) and REMANDING the case to the Commissioner for further administrative proceedings consistent with this Report and Recommendation. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before     December 7th    , 2005, in accordance with 28 U.S.C. §636 and LCvR 72.1. The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this ___17th___ day of ___November___, 2005.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE